FILED

2022 Jan-06  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JEREMIAH WADE MCMULLINS,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-00633-CLM** |
| ) | |
| **KILOLO KIJIKAZI,** ) | |
| **Acting Commissioner** ) | |
| **of the Social Security** ) | |
| **Administration,** ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

Jeremiah Wade McMullins seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"). According to McMullins, both the SSA Appeals Council and Administrative Law Judge ("ALJ") erred in denying his request for benefits. McMullins argues: (1) that the Appeals Council wrongly refused to consider new evidence that he submitted to it, (2) that once the evidence submitted to the Appeals Council is considered, the ALJ's decision isn't supported by substantial evidence, (3) that the ALJ failed to adequately consider his testimony about his medication side effects, and (4) that the ALJ failed to properly weigh the opinion evidence.

As detailed below, neither the Appeals Council nor the ALJ reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

## I.     Statement of the Case

### A.     McMullins' Disability, as told to the ALJ

McMullins was 35 at the time of the ALJ's decision. R. 50, 233. McMullins has a high school education and past relevant work as a fast food worker, janitor, pipe installer, short order cook, carding machine feeder, appliance deliverer, hand packager, and collections clerk. R. 64, 77, 97–98.

In his disability report, McMullins alleged that he suffered from bipolar disorder, OCD, and panic disorder. R. 261. At the ALJ hearing, McMullins testified that he suffers from panic attacks and experiences both manic and depressive episodes. R. 85–86. When McMullins is manic he struggles to sleep. R. 86. But when he's depressed, McMullins will sometimes sleep from 10 PM to 3 PM the next day. *Id.* Though McMullins has been taking medicine for a long time, he doesn't think it helps. *Id.* And McMullins' medicine causes him to suffer from both dizziness and drowsiness. R. 90–91.

McMullins cannot go to his kids' school functions. R. 94. But about four or five times a month he picks his daughter up from school. R. 95.

### B.     Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.      McMullins' Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

McMullins applied for disability insurance benefits, a period of disability, and SSI in November 2016, claiming that he was unable to work because of various ailments, including bipolar disorder, panic disorder, and OCD. After receiving an initial denial in February 2017, McMullins requested a hearing, which the ALJ conducted in February 2019. The ALJ ultimately issued an opinion denying McMullins' claims 15 days later.

At Step 1, the ALJ determined that McMullins was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that McMullins suffered from these severe impairments: bipolar I disorder, panic disorder with mild agoraphobia, and OCD.

At Step 3, the ALJ found that none of McMullins' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine McMullins' residual functional capacity.

The ALJ determined that McMullins had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- McMullins can perform unskilled work, which is simple, repetitive, and routine.

- McMullins' supervision must be simple, direct, concrete, tactful, supportive and uncritical.

- McMullins may need intermittent reminders and supervision (one to two extra times per day).

- Interpersonal contact with supervisors and coworkers should be superficial, casual, and infrequent.

- McMullins will do best in a well-spaced work setting with his own work area or where he can frequently work alone.

- McMullins should have only occasional superficial contact with the general public.

- McMullins must not have to work at fast-paced production line speeds.

- McMullins should have only occasional, gradually introduced workplace changes.

- McMullins must have normal, regular work breaks at least every two hours.

- McMullins can set ordinary daily work goals but may need assistance with long-term or complex planning.

At Step 4, the ALJ found that McMullins couldn't perform his past relevant work. At Step 5, the ALJ determined that McMullins could perform jobs, such as

laboratory equipment cleaner and cleaner II, that exist in significant numbers in the national economy and thus McMullins was not disabled.

### D.      The Appeals Council's Decision

McMullins requested an Appeals Council review of the ALJ's decision. As part of his request for review, McMullins submitted a psychological evaluation and mental health source statement from Dr. June Nichols, a consultative examiner. McMullins also submitted medical records and a mental health source statement from Dr. Frederic Feist, his treating physician at CED Mental Health Center. The Appeals Council denied McMullins' request for review, finding that this evidence "does not relate to the period at issue." R. 2.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

McMullins makes four arguments for why the SSA erred in denying his request for benefits. First, McMullins argues that the Appeals Council wrongly refused to consider new evidence that he submitted to it. Second, McMullins asserts that if the evidence submitted to the Appeals Council is considered, the denial of benefits isn't supported by substantial evidence. Third, McMullins contends that the ALJ didn't adequately address the side effects of his medications. Finally, McMullins challenges the ALJ's evaluation of Dr. Jack Bentley's opinion evidence. The court will first address McMullins' Appeals Council arguments together. The court will then address, in turn, McMullins' arguments that the ALJ erred.

### A.    New Evidence to Appeals Council

McMullins first argues that the Appeals Council erred when it denied his request for review. The Appeals Council will review an ALJ's decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 416.1470(a)(5).

1. <u>Background</u>: McMullins submitted to the Appeals Council CED mental health records, a mental health source statement from Dr. Frederic Feist, a consultative psychological evaluation, and a mental health source statement from

Dr. June Nichols as "new evidence" to consider in the first instance.[1] The CED mental health records show that in April 2019—*i.e.*, almost two months after the ALJ issued his opinion—McMullins had a doctor's appointment at CED Mental Health Center. R. 44–49. McMullins' appearance and speech were appropriate, his behavior was relaxed but withdrawn, and his motor activity was within normal limits. R. 44. McMullins' mood, however, was dysphoric. *Id.* Dr. Feist noted that McMullins had no observed or reported hallucinations. *Id.* And Dr. Feist described McMullins' thought content, thought process, intellectual functioning, orientation, memory, insight, and judgment as within normal limits. *Id.*

McMullins reported that he "always has suicidal thoughts," but denied having a suicidal plan. *Id.* And Dr. Feist recorded that McMullins had never tried to harm himself or others. *Id.* Though McMullins told Dr. Feist that he was "not doing well," he also stated that he'd asked his doctor to take him off Valium because he didn't want to take it anymore. *Id.* Dr. Feist diagnosed McMullins with bipolar disorder; current episode manic without psychotic features, severe; and agoraphobia, unspecified. R. 46. He then adjusted McMullins' medication and told him to return for a follow up in three months. *Id.*

---

[1] McMullins also submitted medical records from Premier Family Care to the Appeals Council. Because McMullins doesn't mention these records in the argument section of his brief, he has waived any argument that the Appeals Council erred in not exhibiting these records. In any event, for the reasons stated in the Commissioner's brief, *see* doc. 12 at 8–9, the Appeals Council correctly found that this evidence wouldn't likely change the outcome of the ALJ's decision.

About a month after this appointment, Dr. Feist filled out a mental health source statement on McMullins behalf. R. 28. This one-page form required Dr. Feist to check boxes, circle 'yes' or 'no,' or fill in short blanks about various disability-related topics. *Id.* Dr. Feist circled that McMullins can: (1) understand, remember, or carry out very short and simple instructions; (2) interact with supervisors and/or co-workers; and (3) maintain socially appropriate behavior and adhere to basic standards of neatness/cleanliness. *Id.* But he answered that McMullins cannot: (1) maintain attention, concentration and/or pace for periods of at least two hours; (2) perform activities within a schedule and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; and (4) adjust to routine and infrequent work changes. *Id.* Dr. Feist then stated that he expected McMullins to be off-task 90% of the time during an 8-hour day. *Id.* He also responded that he expected McMullins' psychological problems to cause him to miss 28 days of work in a 30-day period. *Id.* Dr. Feist finally circled that McMullins' limitations existed back to 5/1/14 and that McMullins' medications caused dizziness, sleep problems, high blood pressure, impaired memory, and aggression. *Id.*

In November 2019—*i.e.*, about 9 months after the ALJ's opinion came out—Dr. June Nichols performed a consultative psychological evaluation on McMullins. R. 9–13. As part of the evaluation, Dr. Nichols reviewed several of McMullins' medical records, including some records submitted to the ALJ. R. 9. Dr. Nichols'

mental status examination found that McMullins had a depressed and anxious mood and sad and tearful affect. R. 11. But McMullins was also fully oriented; had thought processes within normal limits; and no confusion, loose associations, tangential thinking, flight of ideas, or thought blocking. *Id.* McMullins' speed of mental processing was fair, his recent and remote functions grossly intact, his immediate memory functions were fair, his general fund of knowledge was adequate, and he denied obsessions and compulsions. R. 11–12.

After the consultative examination, Dr. Nichols wrote that McMullins "appeared able to understand instructions, but would have difficulty remembering complex instructions to carry them out." R. 13. She then stated that McMullins cannot sustain concentration and persist in work-related activity at a reasonable pace. *Id.* Dr. Nichols also found that McMullins cannot maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. *Id.* Dr. Nichols then determined that McMullins cannot deal with normal pressures in a competitive work setting and that his anxiety interferes with all interactions. *Id.* Dr. Nichols finally found that McMullins could manage his own funds. *Id.*

A few weeks after the psychological evaluation, Dr. Nichols completed a 1-page mental health source statement for McMullins. R. 8. Dr. Nichols circled that McMullins could understand, remember, or carry out very short and simple

instructions and that he could interact with supervisors and/or co-workers. *Id.* But Dr. Nichols responded that McMullins cannot: (1) maintain attention, concentration and/or pace for at least two hours, (2) perform activities within a schedule and be punctual within customary tolerances, (3) sustain an ordinary routine without special supervision, (4) adjust to routine and infrequent work changes, or (5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* Dr. Nichols then stated that she expected McMullins to be off task 40% of time in an 8-hour day and to miss 15–20 days of work in a 30-day period. *Id.* Dr. Nichols also answered that drug use didn't cause McMullins' conditions and that his limitations existed back to 5/1/14. *Id.* Dr. Nichols finally stated that McMullins' medications caused dizziness, sleep problems, high blood pressure, impaired memory, and aggression. *Id.*

      2. <u>Chronological relevance</u>: The Appeals Council didn't exhibit the evidence from Drs. Feist and Nichols, finding that it was not chronologically relevant. *See* R. 2 ("This additional evidence does not relate to the period at issue."). Relying on *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), McMullins argues that even though these new medical records are dated after the ALJ's hearing decision, they are chronologically relevant. *See id.* at 1322–23 (recognizing that medical opinions issued after the ALJ's decision may be chronologically relevant if the opinions stem from medical records from the period

before the ALJ's decision). The Commissioner, however, argues that this evidence does not "provide any of the indices expected" of chronologically relevant documents. *See* Doc. 12 at 12.

The court agrees with the Commissioner that some of McMullins' new evidence isn't chronologically relevant. For example, the April 2019 medical records from CED Mental Health Center are merely treatment notes that summarize McMullins' doctor's appointment. R. 44–49. So these records don't relate to the relevant period. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). Further, Dr. Nichols' mental status examination findings relate to the limitations she observed during her November 2019 evaluation of McMullins, not McMullins' earlier medical records and treatment. R. 11–12. So the mental status examination findings aren't chronologically relevant. *See Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018).

But because it's a close call and doesn't affect the outcome, the court will assume that the mental health source statements and opinions expressed at the end of Dr. Nichols' psychological evaluation are chronologically relevant. The court recognizes that checking a box that a claimant's limitations existed back to the relevant period isn't enough to show that a document is chronologically relevant. *See Hargress*, 83 F.3d at 1309–10. But unlike the treating physician who authored the chronologically irrelevant physical capacities form in *Hargress*, Dr. Feist treated

McMullins during the relevant period. *Cf. id.* at 1310 ("Dr. Teschner began treating Hargess in January 2015 and thus did not treat Hargress in 2013. Therefore, the form did not relate to the period on or before the date of the ALJ's hearing decision.").

And Dr. Nichols reviewed materials much like those that the consultative examiner in *Washington* considered. *See id.* at 1309 (The materials in *Washington* "were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision."). So Drs. Feist and Nichols' opinions *may* be chronologically relevant.

3. <u>Materiality</u>: Even so, this court will affirm the Appeals Council's decision to not review new evidence unless the new evidence is both chronologically relevant and material. *See Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 837 (11th Cir. 2020). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress*, 883 F.3d at 1309.

Though McMullins has submitted three briefs that discuss the Appeals Council's decision to deny his request for review, his briefs all merely cite the legal standard for material evidence and then conclusorily state that the materials from Dr. Nichols and Dr. Feist meet this legal standard. McMullins does not point to what portions of these opinions he contends would have changed the ALJ's decision. Nor

does he explain what portions of the ALJ's opinion would have been different had the ALJ considered the opinions submitted to the Appeals Council.

"[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009). And this court cannot—and will not—make McMullins' arguments for him. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Because McMullins hasn't explained why Drs. Feist and Nichols' opinions are material, he has waived the argument that the Appeals Council erred in denying his request for review.

Even if McMullins hadn't waived the argument, the court would still find that the psychological evaluation and mental health source statements are immaterial. The mental health source statements include only conclusory answers to questions that "do not explain in any detail the reasons for [the] opinions." *See Harrison v. Comm'r Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014). And the ALJ discounted similar opinions from a mental health statement filled out by Katie Beauget, who like Dr. Feist worked at CED Mental Health Center. R. 61. Plus, the extreme limitations found in the psychological evaluation report and mental health source statements contradict the benign mental status exam findings discussed above. *See Hargress*, 883 F.3d at 1310 (finding physical capacities form that contradicted the

doctor's own medical records and other objective medical evidence immaterial). So there's no reasonable possibility that these opinions would have changed the ALJ's decision.

4. Denial not supported: McMullins next asserts that once the evidence submitted to the Appeals Council is considered, the ALJ's decision to deny benefits lacks the support of substantial evidence. Because the court has found that the Appeals Council didn't have to consider McMullins' new evidence, the court need not address this argument. *See id.* But this portion of McMullins' briefs could also be interpreted as challenging the ALJ's findings. So the court will briefly address this argument.

McMullins first argues that the ALJ's decision isn't supported by substantial evidence because he "ignored the opinions of Katie Beaugez and the Commissioner's expert, Dr. Jack Bentley." Doc. 8 at 29. But the ALJ didn't ignore these opinions. Instead, he considered the opinions and then decided to discount them. R. 61–62. So this argument fails.

McMullins also asserts that the ALJ erred in relying on the vocational expert's testimony to find that he was not disabled because the hypothetical question posed to the vocational expert didn't accurately state his pain level or residual functional capacity. "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's

impairments." *Id.* at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

Though it's difficult to parse, it appears McMullins is arguing that the ALJ should have limited him to frequent unscheduled work breaks and allowed him to lie down at least four hours every work day. Doc. 8 at 31 (citing R. 99). But McMullins fails to cite the parts of the record that support these limitations. So McMullins has also abandoned this argument. *See Singh*, 561 F.3d at 1278–29. In any event, having reviewed the evidence, the court finds that substantial evidence supports the ALJ's decision to not include these limitations in McMullins' residual functional capacity assessment.

## B.   Medication Side Effects

McMullins next argues that the ALJ erred because he didn't address the effect McMullins' medication had on his ability to work.

"In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). When an ALJ refuses to credit the claimant's subjective pain testimony, "he must articulate explicit

and adequate reasons" for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). And to fulfill his duty to adequately develop the record, an ALJ may need to elicit testimony and make findings "regarding the effect of [the claimant's] prescribed medications upon her ability to work." *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).

McMullins testified at the ALJ hearing that his medications cause dizziness and drowsiness. R. 90–91. The ALJ addressed this testimony by stating:

> Though he alleges all sorts of side effects, the medical evidence of record revealed rare complaints of side effects and no indication of any side effects which could not be resolved by adjusting medication or dosage. (*See* Exhibits 2F, 3F, 5F, 10F, 12F, 13F, and 14F). For example, recent treating notes show he reported tolerating medications well without side effects (Exhibit 14F/10).

R. 59.

So contrary to McMullins' assertion, the ALJ specifically considered whether McMullins had side effects that limited his ability to work. And McMullins doesn't challenge the ALJ's reliance on these medical records to discredit his subjective testimony about the medication side effects. Instead, McMullins bases his argument that the ALJ erred on the factually faulty premise that the ALJ didn't consider the medication side effects testimony. In short, this argument fails.

### C.     Dr. Bentley's Opinion Evidence

McMullins finally argues that the ALJ improperly discounted the opinion of Dr. Jack Bentley who performed a psychological consultative examination on McMullins in January 2017.

Following his evaluation, Dr. Bentley diagnosed McMullins with panic disorder, PTSD, crystal methamphetamine induced mood disorder, probable borderline intellectual functioning, and chronic back pain. R. 492. Dr. Bentley then found that McMullins would have marked limitations in his ability to sustain complex or repetitive work-related activities. R. 493. Dr. Bentley also determined that McMullins would have mild limitations in his ability to perform simple tasks and communicate effectively with coworkers/supervisors. *Id.*

The ALJ gave "great weight in part and little weight in part" to Dr. Bentley's opinion. R. 61–62. According to the ALJ, McMullins' mental status examination findings, which showed good attention and concentration, supported Dr. Bentley's opinion on McMullins' ability to perform simple tasks. R. 62. But the ALJ noted that though McMullins suffers from anxiety, Dr. Bentley's examination notes state that McMullins did not exhibit any limitations in his receptiveness or expressive communication skills. *Id.* And McMullins' CED records reflect that he exhibited appropriate behavior. *Id.* So the ALJ gave little weight to Dr. Bentley's opinion on McMullins' ability to effectively communicate with others. *Id.*

McMullins raises three arguments related to the ALJ's handling of Dr. Bentley's medical opinions.

1. <u>ALJ substituted judgment for that of Dr. Bentley</u>: McMullins first argues that the ALJ improperly substituted his judgment for the judgment of Dr. Bentley. "[T]he ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But it is the role of an ALJ to determine the claimant's residual functional capacity. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). And an ALJ doesn't inappropriately "play doctor" when weighing the record evidence to make his residual functional capacity assessment. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014).

Here, the ALJ did not take on the role of a physician. Instead, the ALJ resolved conflicting medical evidence about McMullins' communication skills by assigning little weight to Dr. Bentley's opinion on this issue. So McMullins' argument that the ALJ improperly substituted his judgment for that of Dr. Bentley's judgment fails.

2. <u>'Some measure of clarity' lacking</u>: McMullins also asserts that the ALJ failed to provide "some measure of clarity" for why he gave Dr. Bentley's opinion "great weight in part and little weight in part." An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," it is

inappropriate to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotations and citations omitted).

As detailed above, the ALJ gave several specific reasons for why he assigned Dr. Bentley's opinion "great weight in part and little weight in part." So McMullins' argument that the ALJ failed to adequately explain the decision to partially discount Dr. Bentley's opinion lacks merit.

3. 'Degree of suspicion' standard should apply: Citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), McMullins finally asks the court to apply 'a degree of suspicion' to the decision to partially assign little weight to Dr. Bentley's opinion.

The court declines to apply the 'degree of suspicion' standard to the ALJ's assessment of Dr. Bentley's medical opinion for two reasons. First, the Eleventh Circuit has not adopted the 'degree of suspicion' standard. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Second, even if *Wilder*, controlled, *Wilder* is distinguishable from the facts here. In *Wilder*, the consultative examiner's opinion contained the only medical evidence of the claimant's mental impairments. *See Wilder*, 64 F.3d at 337–38. But here the record includes several sources of medical evidence on McMullins' mental impairments. So—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

* * *

To sum up, none of McMullins' arguments persuades the court that the ALJ erred in evaluating Dr. Bentley's opinion evidence. And McMullins hasn't argued that the ALJ gave invalid reasons for rejecting Dr. Bentley's opinion or that substantial evidence doesn't support the ALJ's decision to partially discount Dr. Bentley's opinion. So the court needn't consider those arguments. *See Sapuppo*, 739 F.3d at 81–83.

## IV.   Conclusion

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying McMullins' request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 6, 2022.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE